# EXHIBIT D

Bruce E. Baldinger, Esq. (BB-8715)
THE LAW OFFICES OF BRUCE E. BALDINGER, LLC
991 Rt 22 West
Bridgewater, NJ 08876
(908) 218-0060
Attorney for Plaintiff



UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BUCEPHALUS ALTERNATIVE ENERGY GROUP, LLC | : | Case No. |
| Plaintiff, | : | |
| -vs- | : | 08 CIV 7343 |
| KCR DEVELOPMENT and ANNIE MYOUNG HAE CHAN | : | |
| Defendants. | : | COMPLAINT |

JUDGE PRESKA

The Plaintiff Bucephalus Alternative Energy Group, LLC, through her counsel,

Bruce E. Baldinger, Esq. of the Law Offices of Bruce E. Baldinger, LLC, by way of

Complaint, says:

SUMMARY OF CLAIMS

1.     This action seeks monetary damages brought about by the Defendants'

actions by virtue of the claim being over $75,000.00 and there being

complete diversity.

JURISDICTION AND VENUE

2.     This Court has original jurisdiction over this action under 28 USC Section

1332.  Venue is properly placed in the Southern District of New York

pursuant to 28 USC Section 1391(a)(2), as the Plaintiff conducts business in New York, the principal transactions took place in New York and the property in question (i.e. the membership shares of the Plaintiff) are administered and located in New York.

## PARTIES

3.   At all times hereinafter mentioned, Plaintiff conducted business at 1221 Avenue of the Americas, New York City, New York.

4.   Upon information and belief, Defendants are residents of California.

## FACTUAL BACKGROUND

5.   Plaintiff is in the business of investing in and sourcing investments in alternative energy and clean technology applications and enterprises.

6.   In or about May, 2008, Plaintiff's representative, Charles Kim, was introduced to Defendants for the purpose of investing in Plaintiff's business and other opportunities. Upon information and belief, Annie Chan is an owner as well as an officer or agent of KCR Development.

7.   After a series of discussions between Mr. Kim and Defendants, Defendants determined to provide a two tiered investment. Defendant was to transfer $1,000,000.00 and then, after a period in which Defendants were to assess the strength of the investment, they were then to provide additional capital

of up to $2,000,000.00.

8.     By the time Defendants decided to make their investment, Plaintiff
originally rejected the concept as it had anticipated that it would be fully
funded by other sources.  However, Defendants urged Plaintiff to
reconsider and the officers of Plaintiff met and membership shares were
reallocated to allow Defendants to invest. The fact that Defendants would
seriously consider a substantial later investment was a great inducement for
Plaintiff to accept Defendants' moneys.

9.     On or about May 23, 2008, Defendant Annie Chan caused a wire transfer of
$939,980.00 to be forwarded to Plaintiff.  To date, Defendants have never
explained the shortfall and Defendants have failed to supplement the
transferred sums to the full amount despite demand and acknowledgment of
the shortfall.

10.    As a result of Defendants' failure to pay the full consideration, Defendants
are in default.

11.    Anticipating the balance would be forwarded pursuant to Defendants'
promise to do so, Plaintiff sent to Defendant the Amended Operating
Agreement which included Defendant KCR Development as a Member of
the Plaintiff entity.

12.    Plaintiff continued in its business and received notice on June 2, 2008
through Defendant Chan's son and financial advisor/representative, Edward
Chan, that Defendant Chan  wished to visit the company's offices in New
York and speak with "our partners".  That meeting never took place despite

numerous efforts by Plaintiff's principals to reschedule the same.

13.   Approximately two weeks later, Defendant's son contacted Charles Kim and advised him that Defendants had suffered substantial losses in part because the home the Chans were building in Hawaii (originally budgeted at $25,000,000.00) was running over budget by 100% and that they were in litigation with the contractor over the stonework.  Moreover, their multimillion dollar condominium they had believed had been sold in Korea had fallen through.  Despite this, Defendants only had praise for Plaintiff and its management.

14.   On June 24, 2008, Wayne Okubo, a person completely unknown to Plaintiff but who identified himself as a representative of Defendant Chan, notified Plaintiff that due to Chan's financial pressure, they wanted their investment money returned.

15.   On July 18, 2008, Defendant Chan sent an email to Charles Kim explaining once again that she had made poor investments and that she was receiving pressure from her husband.  She wrote, "I made some bad decisions on property acquisition recently and my residence originally budgeted for 25 million now reaching 50 million and the law suit.  I am on their nerve for not making sound investment decision and my husband put me on hold for that reason."  Based thereupon a meeting was scheduled in California to discuss the Defendants' actions.

16.   Plaintiff scheduled a meeting on July 21, 2008 with Defendant in California and in fact flew out to attend that meeting.  However, Defendant Chan

cancelled the meeting while the representatives of Plaintiff were sitting at the conference table awaiting her appearance.  Charles Kim was informed by Defendant Chan that the reason she determined not to appear at the meeting was that she had decided to retract her representative's demand for the return of the investment money.

17.    On July 24, 2008, Charles Kim received a call from Edward Chan asking once again for the return of the money.  He followed that request with written correspondence.  In addition, a demand was required for repayment in a United States account though drawn off a Korean account

18.    On July 26, 2008, Plaintiff stated that a meeting was required but also that the methodology suggested by Defendants was irregular, conflicting and (in realty) on which Plaintiff had substantial legal concerns over as to money laundering and Patriot Act issues.

19.    On August 4, 2008, representatives of Plaintiff met with Defendant Chan and her family and explained to them that, at the immediate stage, there was not vehicle for the return of the money but that over time a "take-out" may be able to be worked out.

20.    Defendant Chan and her family's response was that unless Plaintiff cooperated and actively participated in a scheme which appeared to be tantamount to money laundering (i.e. taking foreign capital and placing it in one of Chan's United States accounts), Defendants would commence an action against Plaintiff.  The grounds of such action were unclear as Defendant Chan and her family were unable to specify any wrongdoing on

Plaintiff's part other than simply not returning their investment funds. Defendants made it clear that they were sophisticated people and (much like the lesson they were teaching their contractor) they knew how to use the courts to advance their goals.

21.    Based upon the demand for the return of the funds, Plaintiff determined to freeze the further use of Defendant's capital (other than for these litigation costs), until a determination had been made under this action.

22.    As a result of the failure to Defendants to pay the full consideration, the premature demand for the return of the investment capital, and the demand and extortive threat that Plaintiff participate in what appeared to Plaintiff to be a money laundering scheme, Plaintiff has and continues to suffer damages.

### FIRST COUNT
### (Breach of Contract)

23.    Plaintiff repeats the averments in paragraphs 1 through 22 as if set forth at length herein.

24.    Based upon their promise to invest $1,000,000.00, Plaintiff issued its membership shares and reallocated ownership.

25.    Despite their promise to do so, Defendants sent less than the $1,000,000.00 and the balance remains due and owing.

26.    As a result, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demand judgment against Defendants, jointly and severally, as follows:

    a.     Compensatory damages of $61,000.00;
    b.     Interest;
    c.     Attorney's fees;
    d.     Costs of suit;
    e.     Such further relief as the Court should deem appropriate.

## SECOND COUNT
### (Unjust Enrichment)

23.    Plaintiff repeats the averments of set forth in Paragraph 1 through 22 as if set forth at length herein.

24.    Defendants agreed to pay $1,000,000.00 and further additional investments for its share of Plaintiff.

25.    To date, Defendants have failed and refused to pay the full consideration.

26.    Plaintiff has tendered the shares and amended to the Operating Agreement to reflect the Defendants' interest.

27.    Defendants have received more than they are entitled and have been unjustly enriched at the cost, expense and damage of Plaintiff.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, as follows:

    a.     Compensatory damages of $61,000.00;
    b.     Punitive damages;
    c.     Interest;
    d.     Attorney's fees;
    e.     Costs of suit;
    f.     Interest;
    g.     Such further relief as the Court should deem appropriate.

THIRD COUNT
(Tortuous Interference)

28.    Plaintiffs repeat the averments set forth in paragraphs 1 through 27 as if set forth at length herein.

29.    Defendants have wrongfully demanded the return of its investment funds.

30.    As a result, Plaintiff has had to cease the use of the capital and such has substantially interfered with Plaintiff's business.  Importantly, the Defendants' action has made the ability to raise additional capital virtually impossible as these proceedings would be required to be disclosed to any potential investor.  In the present economic environment, investors have no interest in investing in any business entity which is embroiled in litigation.

31.    As a result, Plaintiff has suffered damages.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a.     Compensatory damages of $7,500,000.00;
b.     Punitive damages;
c.     Statutory damages
b.     Attorney's fees;
c.     Costs of suit;
d.     Such further relief as the Court should deem appropriate.

FOURTH COUNT

(Negligence)

32.    Plaintiffs repeat the averments set forth in paragraphs 1 through 31 as if set forth at length herein.

33. Defendants knew or had reason to know that Plaintiff and its members would be harmed by the demand for the withdrawal of the investment capital.

34. As a result of Defendants conduct in making such demand, Plaintiff was required to cease operations and stopped the use of the funds other than the costs of this litigation.  Defendants failed to take reasonable measures to avoid the risk of causing the economic damages

35. As a result, Plaintiff and its Members have suffered damages.

a. Compensatory damages of $7,500,000.00;
b. Statutory damages
c. Attorney's fees;
d. Interest;
e. Costs of suit;
f. Such further relief as the Court should deem appropriate.

FIFTH COUNT

(Breach of Covenant)

36. Plaintiffs repeat the averments set forth in paragraphs 1 through 35 as if set forth at length herein.

37. Implied in every agreement is the covenant of good faith and fair dealing.

38. By demanding the premature withdrawal of its funds, Defendants have breached this covenant.

39. As a result, Plaintiff has suffered damages.

a. Compensatory damages of $7,500,000.00;
b. Statutory damages

    c.       Attorney's fees;
    d.       Interest;
    e.       Costs of suit;
    f.       Such further relief as the Court should deem appropriate.

Dated:  Bridgewater, NJ
        August __ 2008

                By:_____
                    Bruce E. Baldinger, Esq.
                    The Law Offices of Bruce E. Baldinger, LLC