```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
BUCEPHALUS ALTERNATIVE         :
ENERGY GROUP, LLC,             :
                               :
          Plaintiff,           :    08 Civ. 7343
                               :
     -against-                 :    MEMORANDUM
                               :    AND ORDER
KCR DEVELOPMENT and            :
ANNIE MYOUNG HAE CHAN,         :
                               :
          Defendants.          :
---------------------------------X
```

LORETTA A. PRESKA, Chief United States District Judge:

Plaintiff Bucephalus Alternative Energy Group, LLC ("Bucephalus") brings this diversity action against Defendants KCR Development ("KCR") and Annie Chan ("Chan") alleging that Defendants breached a contract to invest at least $1 million in Bucephalus. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Defendants alternatively move to stay this action or to transfer this action to California, where a related case is proceeding. The parties have conducted limited discovery on the issue of whether Defendants are subject to personal jurisdiction in New York. For the reasons set forth below, Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED.

I. BACKGROUND[1]

Bucephalus is a limited liability company organized under the laws of Pennsylvania and having its principal place of business in New York. (Kim Aff. ¶ 2.) It is "in the business of investing in and sourcing investments in alternative energy and clean technology applications and enterprises." (Compl. ¶ 5.) Charles Kim is its representative. (Id. ¶ 6.) KCR is a business entity organized under the laws of California and having its principal place of business in Cupertino. (Chan Decl. ¶ 4.) It has no offices, addresses, employees, bank accounts, shareholders, real property, or advertisements in New York. (Id. ¶¶ 7, 9-14, 16-19.) It "is neither licensed nor qualified to conduct business in New York," does not solicit business in New York, and does not derive substantial revenue from goods used or consumed in New York. (Id. ¶¶ 8, 16-18.) Annie Chan is a 50% owner of KCR (id. ¶ 4) and a resident of California (id. ¶ 3).

In May 2008, Kim and Chan began to discuss whether KCR and Chan would invest money in Bucephalus "and other opportunities." (Compl. ¶ 6.) After negotiations were initially unsuccessful, Bucephalus and Defendants agreed that either Chan or KCR would

---

[1] The facts herein are drawn from both the Complaint and the evidence produced during discovery on the issue of personal jurisdiction. Facts based on the allegations in the Complaint and not controverted by evidence are assumed to be true.

wire at least $1 million to Bucephalus.[2] (Id. ¶¶ 7-8; Chan Aff. ¶¶ 5-6, 22-23.) On May 23, 2008, Chan sent a $939,980 wire transfer from her bank account in Seoul, South Korea to Bucephalus's bank account in Wynnewood, Pennsylvania. (Id. ¶¶ 9, 11; Chan Aff. ¶¶ 5-6.) Bucephalus alleges that Defendants promised to send the balance of the $1 million. (Compl. ¶ 11.) Defendants appear to dispute this. (See Kim Aff. Ex. E.)

Although it considered Defendants to have breached the parties' wire-transfer agreement (see Compl. ¶¶ 9-11), Bucephalus nevertheless sent KCR a document referred to as the "Amended Operating Agreement[,] which included Defendant KCR Development as a Member of the Plaintiff entity" (id. ¶ 11). Kim states in his Affidavit that Bucephalus also issued membership shares in KCR's name. (Kim Aff. ¶ 12.) Yet neither Chan nor KCR ever received shares of stock in Bucephalus (Chan Aff. ¶ 22), and an e-mail from Kim to Chan indicates that Bucephalus would not send KCR an investment certificate unless and until all parties involved had signed the Amended Operating Agreement (Kim Aff. Ex. B). No one ever signed the Agreement. (Chan Aff. ¶¶ 22-23.) On June 24, 2008, a representative of

---

[2] The parties dispute whether this constituted an agreement that Chan and/or KCR would actually invest those funds in Bucephalus or an agreement that Bucephalus would hold the funds in trust pending a final investment decision by Chan and/or KCR. (Compare Kim Aff. ¶¶ 4-5 (describing that agreement as one to invest), with id. Ex. E (describing the agreement as one to hold the funds in trust pending an investment decision by Chan).)

3

Chan informed Bucephalus that Chan wanted the $939,980 returned. (Compl. ¶ 14.) On July 18, 2008, Chan herself notified Bucephalus of her demand. (Id. ¶ 15.) On July 21, 2008, Chan allegedly informed Kim that she had decided to retract her demand for the money. (Id. ¶ 16.)

Three days later, on July 24, 2008, Chan's son demanded that Kim, on behalf of Bucephalus, return the money to Chan. (Id. ¶ 17.) On July 26, 2008, Bucephalus requested a meeting with Defendants to discuss return of the funds. (Id. ¶ 18.) On August 4, 2008, Bucephalus informed Defendants "that, at the immediate stage, there was not vehicle [sic] for the return of the money but that over time a 'take-out' may be able to be worked out." (Id. ¶ 19.) That representation notwithstanding, Bucephalus also allegedly suspected Defendants of money laundering.[3] (Id. ¶ 20.) Defendants threatened to sue Bucephalus for return of the money, and Bucephalus ultimately refused to return the money. (Id. ¶¶ 20-21.)

On August 13, 2008, Chan filed an action against Bucephalus in the California Superior Court, County of Santa Clara. (See Edelson Aff. ¶ 3, Ex. A.) On August 19, 2008, Bucephalus filed the present action. (See Compl.) On September 24, 2008, Defendants moved to (1) dismiss this action for lack of personal

---

[3] These allegations, like others in the Complaint, are somewhat difficult to reconcile. Further, Kim's Affidavit does not even mention his alleged money laundering concerns.

4

jurisdiction, (2) stay this action pending the outcome of the California action, or (3) transfer this action to California. The parties thereafter engaged in limited discovery and full briefing on the issue of whether this Court has personal jurisdiction over Chan and/or KCR.

II.  SUBJECT MATTER JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

III. DISCUSSION

    A.  Legal Standard for Dismissal Under Federal Rule of Civil Procedure 12(b)(2)

"District courts resolving issues of personal jurisdiction must . . . engage in a two-part analysis." Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005).

> First, a district court must determine whether, under the laws of the forum state (New York in this case), there is jurisdiction over the defendant. Second, [it] must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements. . . . In opposing a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant.

Id. (citations omitted).

Under the Civil Practice Law and Rules of New York, Plaintiff must establish either a general basis for jurisdiction under § 301 or a specific basis for jurisdiction under § 302. Russeck Fine Art Group, Inc. v. Theodore B. Donson, Ltd., 867 N.Y.S.2d 20, 2008 WL 2762944, at *3 (N.Y. Sup. Ct. Jun. 27, 2008) (table decision) (citing Duffy v. Grand Circle Travel, Inc., 756 N.Y.S.2d 176, 177-78 (1st Dep't 2003)). A court has general jurisdiction over a nonresident defendant if that person (1) is physically present in New York when served with process, Rawstorne v. Maguire, 192 N.E. 294 (N.Y. 1934); (2) consents to jurisdiction in New York, CV Holdings, LLC v. Bernard Techs., Inc., 788 N.Y.S.2d 445, 446 (3d Dep't 2005); or (3) "has engaged in such a continuous and systematic course of doing business here that a finding of its presence in this jurisdiction is warranted," Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 565 N.E.2d 488, 490 (N.Y. 1990) (internal quotation marks omitted). Alternatively, a court has specific jurisdiction over a non-resident defendant if that person:

(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or

(2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

> (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> (4) owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).

Even if a statutory basis for jurisdiction exists, the assertion of personal jurisdiction over a defendant must comport with constitutional standards. "Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not 'offend traditional notions of fair play and substantial justice.'" Porina v. Marward Shipping Co., Ltd., 521 F.3d 122, 127 (2d Cir. 2008) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). Courts apply a two-step constitutional analysis. Id. First, a court must determine "whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction." Id. Second, if the first step is satisfied, the court must

determine "whether the assertion of personal jurisdiction 'is reasonable under the circumstances of the particular case.'" Id. (quoting Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996)).

### B. Application to Defendants' Motion

Defendants contend that this Court lacks personal jurisdiction over them because their contacts with New York are insufficient to confer either general or specific jurisdiction. Plaintiffs argue that (1) Chan has substantial contacts with New York, (2) Chan's sworn statements should be entirely disregarded because they contain purported inconsistencies, and (3) the Court should draw adverse inferences from Defendants' redactions, which were purportedly done for the purpose of concealing contacts with New York. As discussed below, Plaintiff's contentions are meritless; this Court does not have personal jurisdiction over Chan or KCR.

#### 1. Chan's Contacts With New York Do Not Establish a General Basis of Jurisdiction

Chan is not a resident of New York. (Chan Decl. ¶ 3.) KCR is not incorporated in New York and does not have its principal place of business in New York. (Id. ¶ 4.) Neither Chan nor KCR was physically present in New York when served with process, and

they have not consented to jurisdiction in New York. Thus, the only question with respect to § 301 is whether Chan and KCR are doing business in New York on such a regular basis as will support the assertion of jurisdiction over them. The evidence indicates that they are not.

Bucephalus asserts that the following contacts support a finding that Chan personally is doing business in New York: (1) Chan used at least one and possibly two bank accounts in New York; (2) Chan has investments situated in New York; (3) Chan paid taxes in New York; (4) Chan accompanied her child on a school trip to various cities, including New York; and (5) Chan received the Amended Operating Agreement, which designated New York as the place for arbitration of disputes. Yet these contacts are not as strong as Bucephalus would have the Court conclude. First, Chan's trip to New York was not a business trip. (See Baldinger Cert. Ex. D.) There is no evidence that Chan conducted any business on the trip. Bucephalus offers only the itinerary, which indicates that it was indeed a school trip. (See id.) This itinerary is not evidence that Chan did business in New York. Second, Chan's receipt of the Amended Operating Agreement does not constitute a business contact with New York because the Agreement was never executed by anyone. (See Kim Aff. Ex. B.) It therefore does not establish that Chan agreed to arbitrate disputes in New York. Accordingly, neither of

9

these contributes to the analysis of whether Chan was doing business in New York.[4]

Although the three other contacts do tend to show that Chan was doing business in New York, each one is a relatively attenuated connection to the forum. Chan's investments in New York were made on her behalf by the Goldman Sachs Hedge Fund, LLC and managed in Boston. (Woo Resp. Decl. ¶ 14, Ex. K.) Chan owned less than one percent of the Fund (id. ¶ 14, Ex. K) and had no control over the Fund's investment decisions (id. ¶ 14). The taxes Chan owed in New York were based on her earnings from this Fund and were paid by the Fund on her behalf. (Id. ¶ 14, Ex. K.)

Chan's bank accounts do not strongly connect her to the forum either. Although Chan's sworn statements may be somewhat inconsistent on whether she had an active New York bank account when Bucephalus filed its Complaint, the sworn statements of her financial advisor Myong Shin Woo are not. According to Woo, Chan opened the account in California with Hambrecht & Quist ("H&Q"). (Woo Resp. Decl. ¶¶ 5-6, Ex. B.) H&Q merged with Chase Manhattan Corporation, thereby becoming Chase H&Q. (Id.

---

[4] To the extent the unsigned Agreement does in fact contribute to the § 301 analysis, the Court attributes little weight to it because it is unsigned and because there is no other evidence showing that Chan or KCR actually agreed to the terms therein. Taken together with the other contacts, it would not establish that either Chan or KCR was doing business in New York on a continuous and systematic basis.

¶ 7, Ex. D.)  Then Chase H&Q merged with JPMorgan, thereby becoming JPMorgan Chase & Co.  (Id. ¶ 9, Ex. F.)  The merger changed the situs of the account from California to New York.  (Woo Disc. Decl. ¶ 12.)  The account was at all times managed in San Francisco.  (Id. ¶ 12, Ex. E.)  The account closed in April 2008, before the events giving rise to this action occurred.  (Woo Resp. Decl. ¶ 11.)  Thus, Chan's bank account is only an attenuated business contact with New York.

Finally, the evidence indicates that a New York bank was to serve as an intermediary for the return of the $939,980 Chan demanded from Bucephalus.  (Id. ¶ 12, Ex. I.)  According to a letter from Smith Barney regarding the transfer instructions, Smith Barney uses that particular New York bank as a wire transfer intermediary from time to time.  (Id. Ex. I.)  Nothing indicates that Chan herself selected this bank as an intermediary.  Therefore, this contact is also attenuated.  Adding up these three contacts, the Court cannot conclude that Chan was doing business in New York on such a systematic and continuous basis as to be subject to suit in the forum for that reason alone.

Bucephalus argues that the Court should infer that Chan is concealing other business contacts with New York because many of the documents she produced contained redactions and because her testimony regarding her bank account and certain details about

11

...
...

her professional life is either inconsistent or incredible. An adverse inference is unwarranted here. Bucephalus has not shown that any of the redactions or purported inconsistencies was made in bad faith or for the purpose of concealing contacts with New York. And Bucephalus also has not shown how the details of Chan's professional life on which her testimony was purportedly incredible, such as the date she graduated from college and her title within her family-owned-and-operated business, are relevant to this action. Accordingly, the Court refuses to draw an adverse inference against Chan and concludes that Chan is not subject to general jurisdiction in New York.

2. The Events Giving Rise to This Action Do Not Establish a Specific Basis of Jurisdiction

"In order to establish long-arm jurisdiction pursuant to CPLR [§] 302(a)(1), [Bucephalus] must set forth a sufficient nexus between the claims asserted in the complaint and a contract which was negotiated in New York or a transaction which occurred in [New York]." Goldsmith v. Sotheby's, Inc., 836 N.Y.S.2d 485, 2007 WL 258287, at *5 (N.Y. Sup. Ct. Jan. 2, 2007) (table decision) (citing Holness v. Maritime Overseas Corp., 676 N.Y.S.2d 540, 544 (1st Dep't 1998)). New York "courts look to the 'totality of circumstances' to determine whether a party has

'transacted business' in this state." Id.  Relevant factors include:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state. Although all are relevant, no one factor is dispositive.

Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (citations omitted) (collecting New York cases).

Chan is not subject to personal jurisdiction under this subsection of the New York long-arm statute. First, although Bucephalus has its principal place of business in New York, it is not a New York corporation. In any event, Chan has no ongoing business relationship with Bucephalus: the parties negotiated what may or may not have been an investment, but no party ever signed the Amended Operating Agreement.

Second, no negotiations over the purported investment took place in New York. The negotiations took place between Chan and Kim mainly in California. Not once did the parties meet in New York regarding this contract. And third, although the Amended Operating Agreement designates New York as the forum for

13

arbitration, the Agreement never took effect because no one signed it.  Bucephalus argues that Defendants are subject to jurisdiction in New York because they "did not object" to the Amended Operating Agreement, yet it cites no authority that would impose such a duty on Defendants.  The fourth specified factor is not relevant here, and Bucephalus identifies no additional circumstance that would justify an assertion of jurisdiction over Chan under § 302(a)(1).

With respect to the other grounds for specific jurisdiction,[5] the entirety of Bucephalus's argument regarding §§ 302(a)(2) and (a)(3) is contained in a single sentence in its October 13, 2009 opposition brief.  The argument states that Defendants are subject to jurisdiction under §§ 302(a)(2) and (a)(3) if they are also subject to jurisdiction under § 302(a)(1), which Bucephalus asserts they are.  Bucephalus cites no New York authority for this proposition, and its reply brief cites no authority whatsoever.  This showing is wholly insufficient to carry Bucephalus's burden on this motion.  Accordingly, the Court concludes there is no jurisdiction over Defendants under §§ 302(a)(2) or (a)(3).

Even if the Court were to assess these remaining subsections on the merits, Bucephalus would not have demonstrated that Defendants are subject to specific

---

[5] Section 302(a)(4) is not relevant here.

14

jurisdiction. To establish long-arm jurisdiction under § 302(a)(2), Bucephalus must show that Defendants committed a tort in the state of New York. See Storch v. Vigneau, 556 N.Y.S.2d 342, 343 (1st Dep't 1990). Here, Defendants were not present in New York when they allegedly interfered with Bucephalus's business relations. Accordingly, there is no jurisdiction over Defendants pursuant to § 302(a)(2).

Finally, to establish long-arm jurisdiction under § 302(a)(3), Bucephalus must show that Defendants committed a tort outside New York, the harm from which occurred in New York, and that Defendants either (1) engage in a persistent course of conduct in New York and derive substantial revenue from New York or (2) should reasonably have expected the harm to occur in New York and derive substantial revenue from interstate or international commerce. Bucephalus has not met this burden. Although it alleges both that Defendants interfered from California with Bucephalus's business relations in New York and that Bucephalus was harmed, Bucephalus has not met any other element of § 302(a)(3). First, Bucephalus has not shown how any alleged injury occurred in New York. As the Appellate Division has held, "an injury does not occur in New York within the meaning of CPLR § 302(a)(3) merely because a plaintiff is domiciled in New York and suffers a loss of income here." Storch, 556 N.Y.S.2d at 343. Bucephalus's allegations and

15

evidence do not mention harm that occurred in New York other than that which may have occurred only by virtue of Bucephalus's having an office in New York. Second, as established above, Defendants are not engaged in a persistent course of conduct in New York. Aside from Chan's possible New York bank account, which Bucephalus has not shown was active at the time these events took place, Defendants had no contacts with New York at the time they allegedly interfered with Bucephalus's business. Third, even if Defendants should have reasonably expected harm to occur in New York—a proposition Bucephalus has not demonstrated—Bucephalus does not explain how Defendants derive substantial revenue from interstate or international commerce. The burden to prove jurisdiction is on Bucephalus, and its brief is devoid of any argument regarding substantial revenue. Accordingly, Chan's motion to dismiss this action for lack of personal jurisdiction is GRANTED.

    3.   <u>KCR Is Not Subject to Personal Jurisdiction in New York</u>

In its October 9, 2008 opposition brief, Bucephalus asserts the same jurisdictional arguments with respect to KCR as it does with respect to Chan. In its October 13, 2009 brief, Bucephalus again groups KCR and Chan together in its jurisdictional arguments. Finally, in its November 9, 2009 reply brief,

Bucephalus asserts that either (1) Chan is an agent of KCR or (2) KCR is merely Chan's alter ego. Agency and alter ego are complex legal theories that Bucephalus failed to raise at any time previously, and Bucephalus gives these theories only a cursory mention in its reply brief. Accordingly, the Court deems these arguments waived. See, e.g., Playboy Enters., Inc. v. Dumas, 960 F. Supp. 710, 720 n.7 (S.D.N.Y.1997) ("Arguments made for the first time in a reply brief need not be considered by a court."); Sahu v. Union Carbide Corp., --- F.R.D. ----, 2009 WL 3028998, at *5 n.4 (S.D.N.Y. Sept. 22, 2009). Moreover, as discussed above, Chan is not subject to personal jurisdiction in New York, and Bucephalus does not identify any reason why KCR would nevertheless be subject to jurisdiction. Therefore, this action as against KCR must be dismissed for lack of personal jurisdiction.

Even if Bucephalus had not waived these arguments, they are meritless. With respect to its alter-ego theory, Bucephalus cites no authority and does not apply the law to any facts. Its bald assertions do not carry its burden to show that KCR is subject to personal jurisdiction in New York. With respect to its agency theory, Bucephalus does not even mention the elements of agency or explain how they apply to Defendants here. Finally, assuming Bucephalus had made an argument that Chan was KCR's agent, KCR would only be subject to jurisdiction if Chan's

17

contacts on behalf of KCR were sufficient. See, e.g., Re v. Breezy Point Lumber Co., 460 N.Y.S.2d 264, 267 (N.Y. Sup. Ct. 1983).  For the reasons stated above, Bucephalus has failed to show that Chan was either doing business in New York under § 301 or transacted business in New York under § 302(a)(1).  The analysis applies equally to both her personal and corporate capacities.  Therefore, KCR cannot be subject to personal jurisdiction in New York.  Accordingly, KCR's motion to dismiss this action for lack of personal jurisdiction is GRANTED.

### 4. The Due Process Issue Is Moot

In light of the Court's holding that Bucephalus has not established a statutory basis for personal jurisdiction over either Defendant, the Court need not decide whether the assertion of personal jurisdiction over Defendants would violate their constitutional rights under International Shoe Co. v. Washington, 326 U.S. 310 (1945).

IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [dkt. no. 10] is GRANTED.  The Clerk of Court shall mark this action CLOSED and all pending motions DENIED as moot.


SO ORDERED:

DATED:   New York, New York
         December 22, 2009

                                    _____
                                    LORETTA A. PRESKA, Chief U.S.D.J.